Ramsey Hanafi, SBN 262515
Rory C. Quintana, SBN 258747
Samantha Pungprakearti, SBN 264919
QUINTANA HANAFI PUNGPRAKEARTI, LLP
201 Spear St., Suite 1100
San Francisco, CA 94102
Tel.: (415) 504-3121
Fax: (415) 233-8770
info@qhplaw.com

Attorneys for Plaintiff

**Redacted pursuant to Court order**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIMA SHOMALI, an individual<br><br>Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York Corporation, and Does 1-10<br><br>Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **DISCRIMINATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT;**<br>2. **FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT;**<br>3. **FAILURE TO ENGAGE IN INTERACTIVE PROCES IN VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT; AND**<br>4. **FAILURE TO PAY WAGES (CALIFORNIA LABOR CODE SEC. 204)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nima Shomali (herein "Plaintiff" or "Shomali") brings this action against Defendant INTERNATIONAL BUSINESS MACHINES CORPORATION, (hereinafter "IBM" or "Defendant") a New York Corporation, and DOES 1-10.

### VENUE, JURISDICTION AND INTRADISTRICT ASSIGNMENT

1. This court has jurisdiction in this action pursuant to 28 U.S.C. section 1332, as set forth more fully herein. The parties are diverse and the damages sought in this matter exceed $75,000.

2. This court is the proper venue for this action under 28 U.S.C. section 1391 because the defendants are subject to jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district.

3. Pursuant to Northern District Local Rule 3-2 (c) & (e), this action should be assigned in Oakland or San Francisco, California as the actions giving rise to Plaintiff's claims took place in Contra Costa County.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Plaintiff has properly notified the Equal Employment Opportunity Commission and the Department of Fair Employment and Housing of his intent to sue Defendant and has received a "right-to-sue" notice for all of their claims prior to filing this complaint.

### PARTIES

5. Plaintiff Nima Shomali is an adult who, at all times relevant hereto, was a resident of Lafayette, California. Shomali has been employed by IBM since July 2012.

6. Plaintiff is informed and believes and based thereon alleges, that IBM is a New York corporation with a principal place of business in New York. IBM is an international computer technology company with more than 430,000 employees worldwide. IBM conducts significant business in California.

7. During all relevant times, Defendant was the "employer" of Plaintiff as defined by California Government Code sections 12926(d), 12940(a) and 12940(j)(4)(A).

8. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff and therefore said Defendants are sued under fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants fictitiously named herein is legally responsible in some actionable manner for the events described herein, and thereby proximately caused the damage to Plaintiff. Plaintiff will seek leave of Court to amend this Complaint to state the true names and capacities of such fictitiously named Defendants when the same have been ascertained.

## FACTS COMMON TO ALL CAUSES OF ACTION

9. On about July 19, 2012, IBM offered Shomali employment as a Senior Consultant for approximately $120,000 annually. While Shomali has performed work for IBM all over the world, Shomali's "home office" at the inception of his employment through to the present day is IBM's San Francisco, California office.

10. Prior to his hire at IBM, Shomali had several medical procedures ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. These procedures resulted from health complications Shomali experienced following a 2010 volunteer trip to help hurricane-ravaged Honduras.

11. On July 11, 2012, Shomali had a follow-up surgery at Muir Hospital.

12. On July 27, 2012, IBM Vice President Dan Prieto contacted Shomali by phone to inform him he needed to go to Afghanistan for a project as soon as possible. Shomali informed Prieto of his surgery and recovery, and told Prieto the earliest he could go to Afghanistan was September.

13. On September 22, 2012, Shomali reported for his assignment in Afghanistan.

14. On October 4, 2012, Shomali began to develop serious complications from his ▓▓▓▓▓. Shomali contacted a nurse in the United States and subsequently forwarded her instructions to the compound medic, Ron King. King took Shomali to the medic at Camp Stone Herat, where Lieutenant Commander Brian Black expressed concern about Shomali's health and asked for his physician's confirmation he was healthy enough to stay. Lieutenant Commander

- 3 -

*Shomali v. IBM,* Northern District of California Case No.
COMPLAINT FOR DAMAGES

Black is not an IBM employee. At that time, IBM Team Lead, Andrea Nugent, angrily told Shomali that, due to his importance, he had "jeopardized the re-compete for the upcoming contract." Nugent further told Shomali, "[t]his role and contract is why you were hired and are working at IBM." Shomali understood that if he left the country due to health reasons, he would be fired.

15. Based on Nugent's admonition, Shomali wrote his nurse in the United States to express he was in discomfort but needed a letter confirming his health so he would not be fired. Shomali concurrently began contacting the International Ostomy Association for help in the Middle East.

16. On October 12, 2012, Shomali became severely ill and was taken to the French military hospital for 24 hours. Colonel Wegman of the United States Army expressed that Shomali should be sent home due to his medical condition. Colonel Wegman is not an IBM employee. Prieto called Shomali in Afghanistan and echoed Nugent's sentiment that Shomali was critical to the upcoming contract re-compete. Prieto requested Shomali get a letter from a physician stating Shomali was healthy and forward it to the United States military.

17. On December 4, 2012, Shomali received a project assessment which gave him the highest possible marks in two out of three categories. It states Shomali's efforts are "critical for not only the client but also for IBM during the contract's re-compete."

18. On December 10, 2012, while in the United States for the holidays, Shomali visited his ▬▬▬▬▬▬▬▬▬ at UCSF and John Muir. Shomali's physicians informed Shomali he should have ▬▬▬▬▬▬▬. Shomali delayed the ▬▬▬ for fear of losing his job.

19. In early January 2013, IBM sent Shomali back to Afghanistan.

20. On January 29, 2013, Shomali began developing ▬▬▬▬▬▬▬▬▬▬▬ ▬. Shomali was told he needed to wait three months before returning to the United States for

*Shomali v. IBM*, Northern District of California Case No.
COMPLAINT FOR DAMAGES

treatment, despite having been guaranteed he would not be in Afghanistan for longer than six weeks at a time. Shomali had ▇▇▇▇▇▇ sent to his station via Amazon.

21. On about March 7, 2013, Shomali explained to his teammates that he needed to retire to his room for half an hour during the middle of the day ▇▇▇▇▇▇▇▇▇▇▇▇. This led to friction in conversations and email exchanges with Shomali's IBM colleagues.

22. On April 15, 2013, IBM sent Shomali to New York for a conference. During his time in New York, Shomali visited a doctor at the Hospital for Special Surgery ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, which Shomali delayed for fear of losing his job.

23. On April 26, 2013, Shomali's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. During a work trip to the United States, Shomali visited ▇▇▇▇▇▇ in New Haven, Connecticut to get help. IBM returned Shomali to Afghanistan before he was able to address either ▇▇▇▇▇▇ ▇▇▇▇▇▇.

24. As Shomali's health deteriorated, his relationship with Team Lead Andrea Nugent began to decline. Shomali was forced to spend ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇ in the privacy of his room.

25. IBM noted the fact that Shomali ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ in Shomali's spring performance feedback. Despite his previous high scores and client feedback remaining overwhelmingly positive, IBM gave Shomali the second lowest possible score.

26. On June 7, 2013, the re-compete contract was lost, and Shomali and his team were sent back to the United States.

27. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*Shomali v. IBM*, Northern District of California Case No.
COMPLAINT FOR DAMAGES

██████████████████████████████████████████████████████████
████████████████████████████████.

28. Since approximately June 2013, Shomali has been on disability leave from IBM.

29. In March 2015, Shomali's doctor informed IBM in writing that Shomali could return to work if he was allowed to work from home with limited typing of one hour per day, and that he must be able to ambulate every hour and lie down four to five times per day. IBM refused to put Shomali back to work with this accommodation.

30. On April 3 2015, Shomali's doctor informed IBM in writing that Shomali could return to work if he was allowed to work from home, with limited typing of two hours per day, and that he must be able to ambulate every hour and lie down three to four times per day for five minutes. IBM refused to put Shomali back to work with this accommodation.

31. On April 22 2015, Shomali's doctor informed IBM in writing that Shomali could return to work if he was allowed to work from home four days per week, with limited typing of three hours per day, and that he could travel within California one day per week with the ability to lie down two times a day for 5 minutes at a time. IBM refused to put Shomali back to work with this accommodation. IBM told Plaintiff that it was entirely his responsibility to find a job within IBM and requested written proof that he was looking for such work.

32. At no point after Shomali's doctor communicated any of these accommodations to IBM did IBM make any attempt to enter into any good faith interactive process with Shomali in an effort to put him back to work with these or any other reasonable accommodations. IBM did not consult with Shomali to ascertain the precise job-related limitations and how they could be overcome with any reasonable accommodation, nor did IBM identify potential accommodations and assess their effectiveness. IBM's only response has been demanding Shomali repay IBM $6,493 in purported overpayments of benefits. IBM has also insisted throughout Plaintiff's disability leave that it is entirely Plaintiff's responsibility to find a position that will accommodate his medical needs. Although Plaintiff has identified numerous positions that could accommodate his disability, IBM has refused to consider Plaintiff for any of these positions, or any other positions that may accommodate Plaintiff.

*Shomali v. IBM,* Northern District of California Case No.
COMPLAINT FOR DAMAGES

33. On a week to week basis Plaintiff spends a varying amount of hours a day looking for open consulting positions at IBM along with other administrative work related to his employment. This activity is referred to as being "on the bench." It is the same work that any non-disabled consultant performs for pay. Plaintiff has been doing this since approximately March 2015 without receiving any wages for this work, however.

34. Plaintiff is currently receiving disability benefits and is on unpaid leave.

## FIRST CAUSE OF ACTION
## DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF FEHA

35. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

36. It is the policy of the State of California to prevent discrimination against those suffering from a disability or physical handicap.

37. Plaintiff has, and/or is perceived as having, a past, present, and future physiological condition affecting his musculoskeletal system, and limiting his ability to participate in a major life activity, working.

38. Notwithstanding his physiological condition, Plaintiff could have performed the essential functions of the employment position he held with Defendant. As a result of his physiological condition, Plaintiff requested a reasonable accommodation of modified duties.

39. Defendant perceived Plaintiff as disabled and rather than engaging in the interactive process with Plaintiff or reasonably accommodating Plaintiff, has refused to put Plaintiff back to work.

40. By the above-alleged acts and omissions, and others according to proof, at all relevant times, Defendant discriminated against Plaintiff because of Plaintiff's actual and/or perceived, past, present, and/or future disability.

41. Defendant discriminated against Plaintiff with regard to the terms and conditions of Plaintiff's employment and discharged Plaintiff in violation of the Fair Employment and Housing Act ("FEHA"), thereby committing an unlawful employment practice in violation of Government Code section 12940, subdivision (a).

*Shomali v. IBM*, Northern District of California Case No.
COMPLAINT FOR DAMAGES

42. Pursuant to Government Code section 12965, Plaintiff is entitled to recover against Defendant for the emotional distress and lost income directly caused by Defendant's conduct, for attorneys' fees, for out of pocket medical expenses, and for costs.

43. Because Defendant's treatment of Plaintiff was carried out with malice and oppression in willful and conscious disregard of his rights, Plaintiff is entitled to exemplary damages to punish Defendant pursuant to California Civil Code section 3294. Wherefore, Plaintiff prays for relief as requested below.

## SECOND CAUSE OF ACTION
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION--FEHA

44. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

45. Plaintiff's disabilities necessitated an accommodation of modified work duties.

46. Defendant has to date failed to provide Plaintiff with any accommodation, and has refused to allow Plaintiff to come back to work and earn his salary.

47. As a proximate result of Defendant's unlawful actions, Plaintiff suffered general and emotional distress damages in an amount according to proof.

48. As a further proximate result of the aforementioned violations, Plaintiff suffered harm and is entitled to recovery of unpaid wages, cost of suit, and reasonable attorneys' fees, all in an amount to be determined at trial. Wherefore, Plaintiff prays for relief as requested below.

## THIRD CAUSE OF ACTION
## FAILURE TO ENGAGE IN INTERACTIVE PROCESS—FEHA

49. Plaintiff re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

50. Plaintiff requested reasonable accommodations for his physical conditions, disability, and physical handicaps.

51. Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodations to his work could be made when his physical conditions, disability, and physical handicaps limited his major life activities.

52. Defendant failed to engage in any interactive process and instead refused to allow Plaintiff to return to work with any accommodations. As a proximate result of Defendant's unlawful actions, Plaintiff suffered general and emotional distress damages in an amount according to proof.

53. As a further proximate result of the aforementioned violations, Plaintiff suffered harm and is entitled to recovery of unpaid wages, cost of suit, and reasonable attorneys' fees, all in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## FAILURE TO PAY WAGES FOR HOURS WORKED

54. PLAINTIFF re-alleges and incorporates by reference all of the above paragraphs as if they were set forth here in full.

55. Wages are required in California Labor Code section 200 to include all amounts for labor performed.

56. Hours worked pursuant to IWC Wage Order No. 4-2001, section 2(K) includes "…time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

57. Plaintiff has been on medical leave since approximately June 2013. Since March 2015 Plaintiff has been "on the bench," i.e. not actively consulting for any clients, but still looking for consulting work within IBM. This is normally considered work time for which any other consultant would be paid, but Plaintiff remains on unpaid medical leave.

58. IBM is aware of Plaintiff's worktime and Plaintiff has performed this work at the direction of IBM.

59. IBM failed to pay any wages to Plaintiff while he has been "on the bench."

60. Labor Code section 204 provides that all wages "earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." IBM's failure to pay Plaintiff for his hours worked twice during each calendar month violates this section.

61. As a legal result of the aforementioned conduct, Plaintiff suffered harm and is entitled to recover unpaid wages, cost of suit, and reasonable attorneys' fees, all in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. That the court determine that the Defendant's discriminatory acts violated the FEHA;

2. For injunctive relief requiring Defendant to conduct training for all employees, supervisors, and management on the requirements of the FEHA, the rights and remedies of those who allege a violation of the FEHA, and to permanently prohibit Defendant from engaging in any future discriminatory or retaliatory acts against Defendant's employees;

3. For an award of emotional distress damages to Plaintiff;

4. For compensatory damages;

5. For lost wages;

6. For punitive damages;

7. For appropriate penalties;

8. For reasonable attorneys' fees and costs pursuant to Government Code section 12965(b);

9. For interest;

10. For nominal damages; and

11. For such other and further relief as the Court deems proper.

Dated: June 10, 2015  
                                                  QUINTANA HANAFI PUNGPRAKEARTI, LLP

                                                  /s/Ramsey Hanafi  
                                                  Ramsey Hanafi  
                                                  Attorneys for Plaintiff

*Shomali v. IBM,* Northern District of California Case No.  
COMPLAINT FOR DAMAGES